UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



___

RAMONA L. RICHARDSON,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,[1]

          Defendant.

**DECISION AND ORDER**

1:17-CV-00849 EAW

___

## INTRODUCTION

Represented by counsel, Plaintiff Ramona L. Richardson ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 12), and Plaintiff's reply (Dkt. 16). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted in part, the Commissioner's motion (Dkt. 12) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

___

[1] As of the date of this Decision and Order, Nancy A. Berryhill, the Defendant named by Plaintiff in this matter, is no longer the Acting Commissioner of Social Security. No successor has been named in her place. The Clerk of Court is therefore instructed to substitute the "Commissioner of Social Security" as the Defendant, in accordance with Federal Rule of Civil Procedure 25(d).

- 1 -

## BACKGROUND

Plaintiff protectively filed her application for DIB on April 5, 2013. (Dkt. 7-3 at 12).[2] In her application, Plaintiff alleged disability beginning October 10, 2012, due to: cervical and lumbar herniations and right knee injury; cervical herniations; lumbar herniations; C6 radiculopathy; left arm damage; and right knee pain. (*Id.* at 2-3, Dkt. 7-5 at 2-9). Plaintiff's application was initially denied on July 10, 2013. (Dkt. 7-4 at 4-11). On July 12, 2013, Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (*Id.* at 12-13).

Hearings on Plaintiff's claim were held before ALJ Sharon Seeley in Buffalo, New York, on November 24, 2014, and September 18, 2015. (Dkt. 7-2 at 39-78). Plaintiff's attorney amended Plaintiff's claim for a closed period of disability from October 10, 2012, to October 25, 2013, when Plaintiff returned to work full-time. (*Id.* at 43-44). On March 22, 2016, the ALJ issued an unfavorable decision. (*Id.* at 8-23). Plaintiff requested Appeals Council review; that request was denied on June 28, 2017, making the ALJ's determination the Commissioner's final decision. (*Id.* at 2-4). This action followed.

## LEGAL STANDARD

I. **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*

---

[2] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

*v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2017. (Dkt. 7-2 at 13). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 10, 2012, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of cervical disc herniation, degenerative disc disease of the lumbar spine, and chronic migraine headaches. (*Id.* at 14). The ALJ also identified non-severe impairments, including right knee contusion, bronchitis, goiter, obesity, and hypertension. (*Id.* at 14-15).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 15). The ALJ particularly considered the criteria of Listings 1.04 and 11.00 in reaching her conclusion. (*Id.* at 26).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, the ALJ found that Plaintiff:

> can lift and carry 20 pounds occasionally and 10 pounds frequently; sit six hours in an eight-hour workday and stand and/or walk four hours in an eight-hour workday, alternating every 15 minutes between sitting and standing. The claimant can also frequently stoop, kneel, crouch or crawl and occasionally reach overhead with the bilateral upper extremities.

(*Id.* at 15). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 21).

At step five, the ALJ relied on the testimony of a vocational expert to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of storage facility clerk, furniture rental consultant, and machine tender. (*Id.* at 22). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 22-23).

## II. Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse the Commissioner's decision, or in the alternative, to remand the Commissioner's decision for further proceedings, arguing that: (1) the Commissioner erred in failing to give good reasons for rejecting the opinion of William M. Capicotto, M.D., Plaintiff's treating orthopedic surgeon, that Plaintiff had a "temporary total disability," and failed to fully develop the record; and (2) the Commissioner erred in failing to do a full and proper credibility assessment of Plaintiff. (Dkt. 8-1 at 18-34). For the reasons set forth below, the Court finds that the ALJ failed to properly support her assessment of Plaintiff's RFC and failed to develop the record, and that this error necessitates remand for further administrative proceedings.

### A. Assessment of Medical Opinions of Record

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id.* "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]" *Scitney v. Colvin*, 41 F. Supp. 3d 289, 301 (W.D.N.Y. 2014) (internal quotation omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight

given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33.

In this case, Dr. Capicotto, an orthopedic surgeon, began treating Plaintiff in December 2012 for neck and low back pain, precipitated as a result of Plaintiff's October 2012 motor vehicle accident. (Dkt. 7-7 at 187). At the December 2012 visit, Plaintiff complained of significant neck and lower back pain, with lower back pain aggravated by prolonged sitting or standing, repetitive twisting, turning, lifting, bending, pushing, or pulling. (*Id.* at 188). An examination of Plaintiff's neck revealed diminished strength of 4/5; limited range of motion; and tenderness at C5-7. (*Id.* at 189). An examination of Plaintiff's spine revealed tenderness at L4-S1; loss of normal lumbar lordosis; limited range of motion; negative straight leg raise tests; and painful bilateral heel walk. (*Id.*). Dr. Capicotto noted that x-rays performed by his office of Plaintiff's cervical spine showed a loss of lordosis with disc space narrowing and osteophyte formation at the C5-6 level, and x-rays of the lumbar spine appeared mostly normal. (*Id.* at 190). Dr. Capicotto diagnosed cervical disc herniation with myelopathy at the C5-6 level, and advised Plaintiff that she may want to consider surgery if her pain did not improve over the next month. (*Id.* at 191). Dr. Capicotto assessed Plaintiff's disability status as "Total, temporary." (*Id.*).

Plaintiff continued treatment with Dr. Capicotto on February 11, 2013, April 11, 2013, and May 14, 2013. (*Id.* at 172-186). During these visits, Plaintiff reported some improvement in her back and neck pain, and Dr. Capicotto's clinical findings remained the same. At the May 14, 2013 visit, Dr. Capicotto assessed Plaintiff's disability as "Moderate,

temporary." (*Id.* at 176). Dr. Capicotto further noted that Plaintiff reported she was examined in employee health by a Kaleida Heath physician, who opined that, if she continued work as an LPN, she would have to go back to work with significant restrictions. (*Id.*).

In her written determination relating to the assessment of Plaintiff's RFC, the ALJ noted that Dr. Capicotto's opinion was the only opinion in the record from a treating source. (Dkt. 7-2 at 20). The ALJ found that Dr. Capicotto's opinions that Plaintiff had a "total temporary" and "moderate temporary" disability were "of limited value in assessing the claimant's residual functional capacity because they do not state specific limitations and [Dr. Capicotto] does not appear to consider anything other than the claimant's back impairment." (*Id.*). Despite the "limited value" of Dr. Capicotto's opinions, the ALJ gave them "substantial weight", on the sole basis that these opinions were consistent with the fact that Plaintiff's RFC had improved by May 2013. (*Id.*). Specifically, the ALJ found that "Dr. Capicotto's May 2013 opinion that the claimant had a 'moderate' disability at that point is consistent with the residual functional capacity, which allows for only a limited range of light work level." (*Id.*). The ALJ gave "some weight" to a June 2013 opinion of the consultative examiner, Donna Miller, D.O., as the medical records suggested more substantial limitations than those indicated by Dr. Miller. (*Id.*). The ALJ incorporated Dr. Miller's limitations, but to a "greater extent than she suggested." (*Id.*).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly

correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 U.S. Dist. LEXIS 200302, at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

Here, the assessed RFC is not supported by substantial evidence. As noted by the ALJ, Dr. Capicotto's opinion is the only opinion in the record from a treating source, and the ALJ found that Dr. Capicotto's opinions as to Plaintiff's disability were of "limited value" because they were vague. (Dkt. 7-2 at 20 (Dr. Capicotto's opinions "do not state specific functional limitations")). The ALJ further found that Dr. Capicotto's opinions were incomplete. (*Id.* at 20 (Dr. Capicotto's opinions "[do] not appear to consider anything other than the claimant's back impairment")). Despite these identified inadequacies in Dr. Capicotto's opinions, the ALJ assigned them "significant weight." (*Id.*). However, it is unclear which portion of Dr. Capicotto's vague and incomplete opinions informed the ALJ's RFC, which is quite specific, in that it addresses Plaintiff's ability to lift and carry;

sit, stand, and walk; and stoop, kneel, crouch, crawl, and reach. (*Id.* at 15). The ALJ therefore failed to adequately explain the reasons for the weight given to Dr. Capicotto's opinions.

To the extent the ALJ relied on Dr. Capicotto's use of the term "moderate temporary" to inform the RFC (Dkt. 7-2 at 20), this was also improper, considering the lack of additional information in the record as to what Dr. Capicotto meant when he used that term. *See Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 487 (S.D.N.Y. 2018) ("the Second Circuit has held that when compiling an RFC from the record, an ALJ may not rely on opinions that employ the term 'moderate' . . . absent additional information.") (citation omitted); *see also Garretto v. Colvin*, No. 15 Civ. 8734 (HBP), 2017 U.S. Dist. LEXIS 44556, at *58 (S.D.N.Y. Mar. 27, 2017) ("[The consulting physician's] use of the word 'moderate' is vague and provides no support for the ALJ's conclusion that plaintiff engage in these activities for six hours out of an eight hour day.").

The ALJ also considered the opinion of Dr. Miller. (*Id.* at 20). Dr. Miller opined that Plaintiff had "mild limitations for heavy lifting, bending, carrying, kneeling, and squatting. The claimant should also avoid any dust, irritants, or tobacco exposure which may exacerbate her pulmonary issue." (Dkt. 7-7 at 210-14). The ALJ gave Dr. Miller's opinion "some weight" but not "great weight." (Dkt. 7-2 at 20). Like the ALJ's assessment of Dr. Capicotto's opinions, it is unclear which portions of Dr. Miller's opinions informed Plaintiff's RFC, other than the inclusion of some degree of limitation on lifting, carrying, and kneeling. Dr. Miller did not offer any opinion on Plaintiff's ability to sit, stand and/or walk for certain durations. Further, Dr. Miller did not offer any opinion on Plaintiff's

ability to stoop, crouch, crawl, or reach. However, these limitations are included in the assessed RFC, and the written determination is devoid of any opinion evidence as to what informed the limitations on these particular activities.[3]

Defendant argues that there is no requirement that the ALJ's decision correspond perfectly with any medical opinion, and the Second Circuit has upheld RFC determinations with no corresponding functional assessment. The Commissioner cites to three Second Circuit opinions, including *Wright v. Berryhill*, 687 F. App'x 45 (2d Cir. 2017); *Monroe v. Commissioner*, 676 F. App'x 5 (2d Cir. 2017); and *Johnson v. Colvin*, 669 F. App'x 44 (2d Cir. 2016). However, these cases are distinguishable, because the record in each was clear as to what informed the assessed RFC. For example, in *Monroe*, the ALJ rejected the treating physician's medical assessment, but relied on the physician's treatment notes in formulating the RFC. *Monroe*, 676 F. App'x 6-7. The Second Circuit held that this was proper "[b]ecause the ALJ reached her RFC determination based on Dr. Wolkoff's contemporaneous treatment notes—while at the same time rejecting his post hoc medical opinion ostensibly based on observations memorialized in those notes—that determination was adequately supported by more than a mere scintilla of evidence." *Id.* at 8-9. Here, the ALJ did not discuss how Dr. Capicotto's or Dr. Miller's treatment notes informed the very specific limitations of the assessed RFC. *See, e.g., Holste v. Colvin*, No. 15-CV-582-FPG,

---

[3] In the written determination, the ALJ discusses medical records from Pratibha Bansal, M.D., a pain management specialist, which state that Plaintiff had to alternate between sitting and standing every 10 to 15 minutes. The ALJ discounted these statements in Dr. Bansal's records, as they "simply report the claimant's subjective statements." However, the ALJ noted that she incorporated Plaintiff's need to alternate between sitting and standing in the RFC, but not as frequently. (Dkt. 7-2 at 21). There is no further discussion as to what informed the assessed limitations on sitting and standing.

2016 U.S. Dist. LEXIS 93699, at *13-14 (W.D.N.Y. July 19, 2016) (RFC not supported by substantial evidence where ALJ's RFC assessment simply recited Plaintiff's testimony and the medical record without tying the evidence to specific RFC findings).

"While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.'" *Muhammad v. Colvin*, No. 6:16-cv-06369(MAT), 2017 U.S. Dist. LEXIS 177763, at *10 (W.D.N.Y. Oct. 26, 2017) (citation omitted). In other words, "the ALJ may not interpret raw medical data in functional terms." *Quinto*, 2017 U.S. Dist. LEXIS 200302, at *37 (quoting *Deskin v. Commissioner*, 605 F. Supp. 2d 908, 911-13 (N.D. Ohio 2008)). While it is true that an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *see Matta*, 508 F. App'x at 56, here, the assessed RFC does not appear to be informed or supported by any of the opinions in the medical record. Accordingly, the ALJ's decision was not supported by substantial evidence.

### B. Duty to Develop the Record

The Court also agrees with Plaintiff that the ALJ failed to appropriately develop the record. "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history. . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). It is clear from the written determination that the ALJ recognized the lack of opinion evidence in the record which could be used to adequately inform an RFC assessment. In failing to contact Dr. Capicotto to obtain additional information relating to

Plaintiff's work-related limitations, the ALJ failed to fulfill her duty to develop the record. This was error. *See Whitlock v. Berryhill*, No. 1:17-CV-00948-MAT, 2018 U.S. Dist. LEXIS 172713, at *12-13 (W.D.N.Y. Oct. 5, 2018) (where the ALJ acknowledged that there was little evidence in the record, but nonetheless relied on his own assessment of Plaintiff's functional capacity, presumably based on Plaintiff's testimony and treatment notes, remand required due to ALJ's failure to fulfill his obligation to develop the record).

Because it is unclear from the ALJ's written determination what medical opinions informed the assessed RFC, the case must be remanded for further development of the record. *See Falcon v. Apfel*, 88 F. Supp. 2d 87, 91 (W.D.N.Y. 2000) ("It is considered reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.") (quotation omitted). On remand, the ALJ should work to further develop the record to obtain a useful medical opinion as to Plaintiff's limitations.

### C. **Plaintiff's Remaining Arguments**

As set forth above, Plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No.

13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 12) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: October 19, 2018
       Rochester, New York